# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

IRENE DIXON,

        Plaintiff,

v.

LADISH COMPANY, INC.,
LAWRENCE W. BIANCHI, JAMES C. HILL,
LEON A. KRANZ, WAYNE E. LARSEN,
J. ROBERT PEART, JOHN W. SPLUDE,
GARY J. VROMAN,
ALLEGHENY TECHNOLOGIES, INC.,
LPAD CO., and PADL LLC,

        Defendants.

Case No. 10-CV-1076

## ORDER

On January 11, 2011, plaintiff Irene Dixon ("Dixon") filed a Rule 7(h) expedited Motion to Permit Discovery (Docket #8). In that motion, Dixon requested that the court allow expedited discovery proceedings and set a schedule for filing a preliminary injunction. Furthermore, on January 18, 2011, defendant Ladish Company, Inc. ("Ladish") filed a Motion to Coordinate Proceedings and Pretrial Proceedings (Docket #22), seeking to coordinate this case with a parallel one filed in Wisconsin state court. Defendants Allegheny Technologies, Inc., and Ladish also filed motions to dismiss. (Docket #19, 27). For the reasons discussed below, the court will deny the motion to expedite discovery, grant Allegheny's motion to dismiss, and defer ruling on the motion to coordinate. Further, the court will take no action on Ladish's motion to dismiss as the motion has not yet been fully briefed.

This case arises from a November 2010 merger agreement between Ladish and defendant Allegheny Technologies, Inc. Per that merger agreement, Allegheny agreed to acquire Ladish. Ladish shareholders would receive $24 in cash and .4556 shares of Allegheny stock for each share of Ladish stock. Together, the consideration was valued at $48 per share as of the time defendants announced the merger. Dixon has brought suit as a shareholder, alleging that Ladish and individual defendant directors have breached fiduciary duties by pursuing and agreeing to the transaction. Dixon also alleges that Allegheny Technologies, Inc., and two defendant wholly-owned subsidiaries, LPAD Co. and PADL LLC (collectively, "Allegheny") aided and abetted Ladish and the individual defendants in breaching their duties.

I.  **MOTION TO EXPEDITE DISCOVERY**

According to Dixon, Ladish intends to hold a shareholder vote on the merger and, as such, she will need to file for a preliminary injunction to prevent irreparable harm to both her and a putative class of shareholders. In order to do this, she argues, limited discovery is necessary prior to any Rule 26(f) conference. However, Dixon has not tendered anything to show that Ladish has set an actual date for the shareholder vote and, in any event, discovery is not permitted in this situation during the pendency of motions to dismiss. Thus, the court will deny the motion.

Normally, parties may not conduct discovery prior to conferral under Rule 26(f) unless authorized by court order. Fed. R. Civ. P. 26(d)(1). Such an order will

ordinarily require some showing of good cause. *See Sheridan v. Oak Street Mortg., LLC*, 244 F.R.D. 520, 521 (E.D. Wis. 2007) (citing 8 Charles Alan Wright, et al., *Federal Practice and Procedure*, § 2046.1 (2d ed. 1998)). However, under the Private Securities Litigation Reform Act ("PSLRA"), "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). Actions brought pursuant to § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a), are governed by the PSLRA. *Beck v. Dobrowski*, 559 F.3d 680, 681-82 (7th Cir. 2009).

Dixon alleges violations of Sections 14(a) and 20(a) of the Securities Exchange Act. (Am. Compl. ¶¶ 57-70) (Docket #4). Here, though not filed at the time of Dixon's 7(h) motion, there are now two pending motions to dismiss. Thus, by the terms of the PSLRA, no discovery may proceed. Further, given the lack of any showing that the shareholder vote has a date certain, it would not appear Dixon has shown undue prejudice. However, that does not foreclose the possibility, particularly given that Dixon's 7(h) motion did not address that particular argument. Instead, should Dixon believe that particularized discovery is necessary, the court will entertain further motion on either the need to preserve evidence or prevent undue prejudice.

As to Ladish's motion to coordinate, the court will refrain from making a ruling until it has disposed of the two motions to dismiss.

## II. ALLEGHENY'S MOTION TO DISMISS

In her Amended Complaint, Dixon lays out what she labels "preclusive deal protection devices" contained in the merger agreement. (Am. Compl. ¶¶ 43-48). These include: a non-solicitation clause barring Ladish from looking for a higher bidder; a clause allowing Allegheny to review any unsolicited offer and make a counter-offer; and, a termination fee to be paid by Ladish for pursuing another offer, amounting to roughly 4% of the transaction value. (*Id.* ¶¶ 44-46). Because Allegheny's motion to dismiss is now fully briefed, the court resolves it as well, finding that Dixon has failed to state a claim for relief.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asserts that the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to survive the motion, the complaint must allege sufficient facts to state a "plausible" claim to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "labels and conclusions" and "a formulaic recitation of the elements" are insufficient, the complaint need only "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court reads the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all possible inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th

Cir. 2008). Factual allegations are presumed true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. However, legal conclusions are not entitled to this assumption of truth. *Iqbal*, 129 S. Ct. at 1950.

The tort of aiding and abetting in Wisconsin requires the defendant: (1) "undertake[] conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) consciously desires or intends that his or her conduct will yield such assistance." *Edwardson v. Am. Family Mut. Ins. Co.*, 589 N.W.2d 436, 440 (Wis. App. 1998). While there is no direct case law on aiding and abetting a breach of duty regarding merger, Wisconsin courts often look to Delaware for guidance concerning corporate law. *Notz v. Everett Smith Grp., Ltd.*, 2009 WI 30, ¶ 35, 316 Wis. 2d 640, 764 N.W.2d 904. Generally, liability for aiding and abetting a breach of a fiduciary duty to stockholders requires the defendant "knowingly participate" in the breach. *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001). Knowing participation requires "knowledge that the conduct advocated or assisted constitutes" a breach. *Id.* at 1097. This does not include "attempts to reduce the sale price through arm's-length negotiations." *Id.* Examples of sufficient knowledge include creation or exploitation of conflicts of interest among board members or direct conspiracy with the board. *Id.* at 1097-98.

Dixon also cites to a case noting that "[i]t may be that some circumstances will arise in which the terms of the negotiated transaction themselves are so suspect as to permit, if proven, an inference of knowledge of an intended breach of trust." But

Delaware courts have also held non-solicitation provisions and termination fees as high as at least 7% of the transaction value insufficient to support an aiding and abetting claim. *Malpiede*, 780 A.2d at 1081 n.10, 1096-98; *see also, e.g.*, *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 725, 734-35 (Del. Ch. 1999) (non-solicitation clause and roughly 2% termination fee insufficient where complaint alleged defendant "approved and urged" entrance into the merger); *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 63-64, (Del. 1995) ("no-shop" clause and $50 million termination fee in merger agreement did not state a claim).

It is clear from the face of Dixon's complaint that, even taken as true, it fails to state a claim for aiding and abetting. By way of facts, it alleges only a non-solicitation clause, a 4% termination fee, and an option to make a counter-offer on any unsolicited bid. None of these terms are so suspicious as to raise an inference that Allegheny knew Ladish or the individual defendants intended to breach any fiduciary duty. Delaware courts have regularly accepted non-solicitation clauses and termination fees, and the implicit reasons for doing so are persuasive. Such terms are negotiated by potential buyers in order to place themselves in the best possible bidding position. The same holds for the counter-offer provision, which is in fact entirely innocuous. Our system of free enterprise expects parties to negotiate the best terms possible. The terms here are simply ones which aid Allegheny's bid. There are no further allegations in the complaint that even raise an inference that

these terms were otherwise forced upon Ladish in some wrongful manner.[1] Thus, the terms themselves do not give rise to an inference of knowledge sufficient to show a plausible aiding and abetting claim.

The remainder of Dixon's allegations regarding Allegheny are entirely conclusory. Though she asserts that the terms are "onerous and preclusive deal protection devices," that phrase is little more than a legal conclusion wrapped up in descriptive language; it is not entitled to the assumption of truth. Dixon briefly asserts that Allegheny issued, or caused Ladish to issue, a materially deficient registration statement. To the extent the complaint can even reasonably be read to allege that, it would not be actionable as aiding and abetting a Securities Exchange Act violation,[2] and the act of issuing the registration statement as a step in the merger process raises no more plausible allegation of knowledge than the fact of having negotiated the deal in the first place.[3] Dixon has not pled anything plausible beyond an arm's-length negotiation between the parties and, as a result, has failed to state a claim for relief. Therefore, the court will grant Allegheny's motion to

---

[1] Not to say that would necessarily be sufficient given how common these terms are.

[2] See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 157-58 (2008) (aiding and abetting not privately actionable under the Securities Exchange Act).

[3] In fact, under the complaint's pleadings, it is likely less plausible than the negotiation itself. Dixon has not alleged any form of conspiracy between Allegheny and Ladish to issue a materially false registration statement. Instead, reading this into the complaint's otherwise conclusory allegations (Am. Compl. ¶¶ 80-87), Dixon has, at best, alleged that but for Allegheny's entering an agreement with Ladish, Ladish would not have issued a registration statement, regardless of its contents. While true, it raises no plausible claim of aiding and abetting.

dismiss. As noted previously, the court still awaits full briefing of Ladish's motion to dismiss.

Accordingly,

**IT IS ORDERED** that the plaintiff's Motion to Permit Discovery (Docket #8) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants Allegheny Technologies, Inc.'s, LPAD Co.'s, and PADL LLC's Motion to Dismiss (Docket #27) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the **Fourth Cause of Action** of the plaintiff's Amended Complaint (Docket #4) be and the same is hereby **DISMISSED**. Defendants Allegheny Technologies, Inc., LPAD Co., and PADL LLC are hereby dismissed from this action.

Dated at Milwaukee, Wisconsin, this 22nd day of February, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge