# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

IRENE DIXON,

        Plaintiff,

    v.                                                       Case No. 10-CV-1076

LADISH COMPANY, INC.,
LAWRENCE W. BIANCHI, JAMES C. HILL,
LEON A. KRANZ, WAYNE E. LARSEN,
J. ROBERT PEART, JOHN W. SPLUDE,
and GARY J. VROMAN,

        Defendants.

---

## ORDER

On January 14, 2011, defendants Ladish Company, Inc. ("Ladish"), Lawrence

W. Bianchi, James C. Hill, Leon A. Kranz, Wayne E. Larsen, J. Robert Peart, John

W. Splude, and Gary J. Vroman (collectively, "Individual Defendants") filed a Motion

to Dismiss Plaintiff's Amended Complaint (Docket #19).  On January 18, 2011,

defendants also filed a Motion to Coordinate Discovery (Docket #22) with a parallel

case in Wisconsin state court.

This case arises from a November 2010 merger agreement between Ladish

and Allegheny Technologies, Inc. ("Allegheny").  Per that merger agreement,

Allegheny agreed to acquire Ladish.  Ladish shareholders would receive $24 in cash

and .4556 shares of Allegheny stock for each share of Ladish stock.  Together, the

consideration was valued at $48 per share as of the time defendants announced the

merger.

**ANALYSIS**

The court will grant the motion to dismiss and thus will further deny the motion to coordinate as moot. In her Amended Complaint (Docket #4), plaintiff Irene Dixon ("Dixon"), a shareholder, alleges three causes of action against the various defendants.[1] The first two causes of action arise under the Securities Exchange Act Sections 14(a) and 20(a), 15 U.S.C. §§ 78n(a), 78t(a). The third is a claim for breach of fiduciary duties arising under Wisconsin law. Dixon alleges the Section 14(a) violation against both Ladish and the Individual Defendants, while she alleges the Section 20(a) and breach of fiduciary duties claims against only the Individual Defendants. Ladish and the Individual Defendants (collectively, "Ladish Defendants") assert that Dixon has failed to state a claim as to both the Section 14(a) and breach of duties claims.[2] The court will address each in turn.

Per Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss asserts that the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to survive the motion, the complaint must allege sufficient facts to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court reads the

---

[1] The court, in its February 22, 2011 order, dismissed a fourth cause of action against a separate set of defendants, including Allegheny.

[2] Ladish Defendants do not directly challenge the Section 20(a) claim because, if the Section 14(a) claim fails, so too does the Section 20(a) claim. *See* 15 U.S.C. § 78t (liability related to other violations under the chapter); *see also Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992) (secondary liability under Section 20(a) dependent on primary violation).

complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all possible inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Factual allegations are presumed true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. However, legal conclusions are not entitled to this assumption of truth. *Iqbal*, 129 S. Ct. at 1950. While "labels and conclusions" and "a formulaic recitation of the elements" are insufficient, the complaint need only "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, upon accepting all well-pleaded facts, the complaint must "contain something more . . . than . . . a statement of facts that merely creates a *suspicion* [of] a legally cognizable right of action." *Id.* (alteration in original; emphasis added). A touchstone of a satisfactory complaint is plausible suggestion of, not mere consistency with, the alleged wrongdoing. *Id.* at 557. As such, the Supreme Court has further stated that a claim is plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## I.  SECTION 14(a) VIOLATION

With regard to Dixon's Section 14(a) allegation, the Ladish Defendants assert that she has failed to state a claim generally, but has also failed to plead it with the particularity required under the Private Securities Litigation Reform Act ("PSLRA"),

15 U.S.C. § 78u-4. Because the court agrees that Dixon has failed to plead the claim with sufficient particularity, it focuses only on that issue. Section 14(a), through SEC Rule 14a-9, makes actionable solicitation of proxies by means of a proxy statement containing false or misleading material facts, or omissions of material facts necessary in order to make statements therein not false or misleading. 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a). The PSLRA is applicable to claims made under Section 14(a). *Beck v. Dobrowski*, 559 F.3d 680, 681-82 (7th Cir. 2009). Specifically, in any action alleging an untrue statement of material fact or omission of material fact necessary to make statements not misleading, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).[3]

Dixon argues in her response that she has pled a number of facts which, if not material as a matter of law, at least present questions of fact as to materiality, making dismissal on the pleadings improper. This may well be true, however Dixon fails to address the particularity requirements of the PSLRA. After comparing the Amended Complaint to the pleading requirements of the Act, it is clear the allegations are insufficient. At the outset, Dixon alleges that the registration statement, also serving as the proxy, "misstates and/or omits material information"

---

[3]As regards omissions, it follows that the PSLRA requires a plaintiff plead with the same particularity the statements made misleading or false by any alleged omission.

concerning four categories of information. (Am. Compl. ¶ 4). The complaint repeats such generalized allegations twice more before alleging any specific facts. (Am. Compl. ¶¶ 49-50). These general allegations are too conclusory to state a claim on their own. Dixon then alleges that the registration statement indicates Ladish was in the middle of a "long-term strategic plan for growth and expansion" in November 2009 when first approached by Allegheny about a merger, but that the statement fails to disclose the parameters of that plan, or why the plan subsequently led Ladish Defendants to approve the merger. (Am. Compl. ¶ 51). This allegation, while factually specific as to what was omitted, does not allege any facts regarding what other statements became misleading or false as a result, nor *why* any such statement was misleading or false. The next allegation asserts that the registration statement describes some of the sale process leading up to the merger, specifically interactions with an alternate "Bidder X," but that the statement does not describe sufficiently why Ladish Defendants authorized continued discussions only with Allegheny and not Bidder X. (Am. Compl. ¶ 52). Again, regardless of materiality, Dixon does not allege what other statements became misleading or false as a result of this omission, nor why. Dixon next alleges that the registration statement fails to disclose the process which led to the selection of the financial advisor that Ladish Defendants consulted regarding the potential merger. (Am. Compl. ¶ 53). Again, there is no further allegation of resultant misleading or false statements, nor an explanation of why any such statements were misleading or false. Dixon then

alleges the registration statement "critically" omitted further description of the "other factors" referenced in the statement leading Ladish Defendants to proceed exclusively with Allegheny. (Am. Compl. ¶ 54). Again, there is no accompanying explanation of what statements became misleading or false as a result, nor why they would be so. Finally, Dixon alleges that the "fairness opinion" of Ladish Defendants' financial advisor itself was "plagued by materially false statements and omissions." (Am. Compl. ¶ 55). Dixon's allegation further asserts that the opinion failed to disclose information allowing shareholders to make an intelligent determination, followed by a list of five items that the advisor should have included in the opinion, but did not. (Am. Compl. ¶ 55). But again, this allegation is not tied to another statement which became misleading or false as a result, nor an explanation of why any such transformed statement is in fact misleading or false. This is the extent of Dixon's allegations.[4] As such, Dixon has not met the pleading requirements of the PSLRA, regardless of whether the omissions cited would be material. Therefore, the court is constrained to dismiss the claims under Section 14(a) and 20(a) of the Securities Exchange Act.[5]

---

[4]There are, again, more general legal allegations that follow, which are certainly acceptable in terms of providing a framework, but cannot be given the assumption of truth.

[5]As mentioned earlier, *supra* note 2, the Section 20(a) claim necessarily fails if the Section 14(a) claim fails.

## II.    BREACH OF FIDUCIARY DUTIES

As to Dixon's second claim, for breach of fiduciary duties, the court agrees that when read in light of Wisconsin's business judgment rule, the complaint fails to state a claim for relief.  The business judgment rule "creates an evidentiary presumption that the acts of the board of directors were done in good faith and in the honest belief that its decisions were in the best interest of the company."  *Reget v. Paige*, 2001 WI App 73, ¶ 18, 242 Wis. 2d 278, 626 N.W.2d 302; *see also Einhorn v. Culea*, 2000 WI 65, ¶ 19, 235 Wis. 2d 646, 612 N.W.2d 78.  To place an action outside of the business judgment rule, there must be evidence to rebut the presumption. *Reget*, 2001 WI App 73 at ¶ 20.  Thus, at the pleading stage, a plaintiff must necessarily allege facts that make rebuttal of the presumption plausible.  In other words, Dixon must allege facts that plausibly show the Individual Defendants failed to act in good faith and with a belief that their actions were in the company's best interest.

### A.    Applicability of the Business Judgment Rule

To begin, Dixon makes a number of arguments that the business judgment rule does not apply as usual here.  However, she is incorrect.  Where there is no direct law on point, Wisconsin courts often look to Delaware for guidance concerning corporate law.  *Notz v. Everett Smith Grp., Ltd.*, 2009 WI 30, ¶ 35, 316 Wis. 2d 640, 764 N.W.2d 904.  Dixon first argues that, rather than presuming the Individual Defendants' good faith, this is a case where the burden is shifted to the defendants

to affirmatively establish such. In support, Dixon mistakenly cites to an Eastern District of Wisconsin case stating that Wisconsin courts would apply the burden-shifting *Unocal* standard from Delaware. In *Amanda Acquisition Corp. v. Universal Foods Corp.*, 708 F. Supp. 984, 1009 (E.D. Wis. 1989), this court did in fact state that a Wisconsin court would apply the *Unocal* standard. However, the *Unocal* standard is not applicable in a situation such as this, thus *Amanda* is inapplicable. In *Unocal*, the Supreme Court of Delaware held that in the context of a hostile takeover, wherein the defendant board members take defensive action to defeat the takeover, the business judgment rule applies, but only after a threshold showing of good faith and a reasonable investigation into the threat posed by the takeover. *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 954-55 (Del. 1985). The court did *not* say that the burden is shifted in any sale or transfer of ownership, but only where there is "a danger to corporate policy and effectiveness . . . because of another person's stock ownership." *Id.* at 955. The basis for this rule is certainly reasonable in that a higher level of scrutiny is due under "the omnipresent specter that a board may be acting primarily in its own interests." *Id.* at 954. In establishing that defensive action in the face of a hostile takeover is such a situation, the court noted the long-time recognition that there is an "inherent danger in the purchase of shares with corporate funds to remove a threat to corporate policy when a threat to control is involved. The directors are of necessity confronted with a conflict of interest." *Id.* at 954-55. In other words, scrutiny becomes heightened where there

may be "a desire [for the board] to perpetuate themselves in office." *Id.* at 955. Here, however, the context of the merger before the court is not one in which the Individual Defendants are taking defensive measures to beat back a threatened hostile takeover by Allegheny. Thus, *Unocal* is inapplicable, regardless of whether a Wisconsin court would apply the standard in appropriate circumstances.

Dixon attempts to argue, somewhat opaquely, that other Delaware case law indicates that *Unocal* is applicable to all stock sales or mergers. This is not the case, however, apparent after both giving the cited Delaware opinions more than a cursory reading, as well as in light of Wisconsin circuit court decisions. To begin with Delaware law, Dixon cites the *Revlon* opinion for this mistaken proposition, but confuses the fact that *Revlon* first recognized that *Unocal* applied only to anti-takeover measures, and *then* decided to extend that heightened scrutiny to situations where a board has allegedly failed to maximize value in a regular merger. *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 180-82 (Del. 1986). *Revlon* essentially establishes two propositions. First, that there is a duty of corporate boards to maximize value in the merger context. And second, that where that duty arises, Delaware will apply the *Unocal* standard that shifts the burden to defendants before application of the business judgment rule. Thus, *Unocal's* heightened scrutiny remains constrained to anti-takeover measures, while *Revlon* extended the scrutiny to situations where the duty to maximize value arises. But, as will be discussed below, Wisconsin has rejected the *Revlon* duty to maximize value.

Thus, *Unocal* is inapplicable here, and *Revlon*'s extension of the rule is likewise inapplicable.

The additional cases Dixon cites for the proposition that *Unocal* applies to all mergers are not inconsistent with this analysis. In one case, a Delaware court indeed applied a heightened standard of review, but only in the context of ensuring that a board of directors complied with their *Revlon* duties. *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 192 (Del. Ch. 2007). Dixon cites another case for the burden-shifting proposition, but it too is reliant upon the *Revlon* duty to maximize value in the sale of a company. *Ryan v. Lyondell Chem. Co.*, No. 3167-VCN, 2008 WL 2923427, at *12 (Del. Ch. July 29, 2008), *rev'd*, 970 A.2d 235 (Del. 2009). Neither does Dixon's citation to a Seventh Circuit case bolster her assertion, as it merely applied *Unocal* to a case decided under Indiana law dealing with a hostile takeover and use of the poison pill defense. *Dynamics Corp. of Am. v. CTS Corp.*, 805 F.2d 705, 708 (7th Cir. 1986). As mentioned above, and discussed below, the *Revlon* duty does not apply in Wisconsin.

Though there is little Wisconsin case law on the subject, two circuit courts have rejected application of the *Revlon* duty to focus only on maximization of value in a merger transaction. In the first case, the circuit court gave an oral decision on a motion for temporary injunction, ultimately denying the motion because the plaintiff failed to show irreparable injury, lack of an adequate remedy at law, and a reasonable probability of success on the merits. *In re Shopko Stores, Inc. S'holder*

*Litig.*, No. 05-CV-677 (Brown Cnty. Cir. Ct. Sept. 2, 2005) (Defs.' Br. in Supp. Ex. E) (Docket #20-5). There, the court stated simply that it did not believe *Revlon* to be the law of Wisconsin, despite guidance Delaware law might otherwise provide. *Id.* at 19:22-20:8. Specifically, the court rested this opinion on the fact that Wisconsin enacted a statute, post-*Revlon*, authorizing directors to consider constituencies other than just shareholders when making corporate decisions. *Id.* at 20:4-21:18. The statute provides that, in discharging duties to the corporation, a director or officer may also consider effects of the action on employees, suppliers, customers, communities in which the corporation operates, and any other pertinent factor. Wis. Stat. § 180.0827. The other decision, from Winnebago County, arose in the context of a motion to dismiss, ultimately denied. *Ponds Edge Capital LLC v. Outlook Grp. Corp.*, No. 06-CV-489 (Winnebago Cnty. Cir. Ct. Nov. 29, 2006) (Defs.' Br. in Supp. Ex. F) (Docket #20-6). There, the court agreed with the *Shopko* court, stating that *Revlon*'s duty to maximize value for shareholders is not the law in Wisconsin, but rather the general application of the business judgment rule. *Id.* at 23:2-23:14.

In response, Dixon argues that *Shopko* was not decided in the context of a motion to dismiss, and that *Ponds Edge* suggests that these types of cases are generally not properly decided on motions to dismiss. While Dixon is correct that the motion in *Shopko* was not for dismissal, that fact does not displace the circuit court's finding that *Revlon* is not the law in Wisconsin. Further, while the *Ponds Edge* court did state that it was uncomfortable deciding the case on a motion to dismiss rather

than one for summary judgment, that decision is necessarily limited to the factual content of the complaint and other circumstances unique to each case. If the instant case is properly dismissed on the complaint, then it is properly dismissed, and it is of no consequence whether a different court came to a different decision in a case with different circumstances.

More relevant to this discussion, Dixon argues that *Shopko* in fact supports the idea that corporate directors should attempt to maximize value in a merger transaction. For that proposition, she cites to the opinion's discussion of the sales process undertaken by the board in that case. *Shopko*, at 6-8. But that discussion merely lays the groundwork for the court's decision; it in no way implies that the sole goal of a merger transaction is to maximize value for shareholders. While it may implicitly approve of the sale process involved in that case, the court did not make any specific findings regarding a requirement to maximize value. And in any event, it would fly in the face of the court's later recognition that Wisconsin statute authorizes considerations beyond the shareholders. Thus, it is clear that *Shopko* does not advocate a rule that directors focus solely on maximizing value to shareholders, though certainly consideration of shareholders is required and relevant.

Ultimately, though circuit court opinions are not binding, they may be very persuasive when attempting to discern how a Wisconsin court would interpret Wisconsin law. That alone gives great weight to the opinions here. But even

beyond that, the reasoning in the opinions is itself persuasive. The Wisconsin Legislature enacted § 180.0827 after *Revlon*, and it specifically authorizes corporate directors to consider more than just shareholders in executing their duties. Such a provision is in direct conflict with a rule that would require directors to focus solely on maximizing value for the benefit of shareholders. Thus, *Revlon* cannot be the rule in Wisconsin. Therefore, in total, the court finds that neither *Unocal* nor *Revlon* are applicable in the case at hand and the business judgment rule applies in the first instance.

Dixon additionally argues that, even so, the business judgment rule does not protect a board from allegations of bad faith. That is true, but no one has argued it does. At this stage, the court must now review the allegations in the complaint to determine whether they state a claim that could plausibly rebut the business judgment rule's presumption. However, in arguing that the business judgment rule does not protect directors who take actions in bad faith, Dixon also slips in the assertion that such acts of bad faith include breaching the duty of complete candor. In essence, Dixon equates that alleged breach of duty with bad faith. For this proposition, she cites to an unpublished Wisconsin appellate court decision, *Stauffacher v. Checota*, No. 87-1925, 1989 WL 53598 (Wis. App. March 9, 1989). There are two problems with the argument. First, Wisconsin courts do not permit litigants to cite unpublished appellate decisions issued before July 1, 2009, as

precedent or authority. Wis. Stat. § 809.23(3)(a).[6] Second, the case does not stand

for that proposition in any event, but rather simply states that there is a duty of

candor. *Stauffacher*, 1989 WL 53598 at *6. Dixon's assertion that breaching the

duty of candor is itself an act of bad faith is not supported by citation to law. This is

evident from the generally accepted meaning of bad faith, which involves knowledge

of, or at least reckless disregard for, an act's wrongfulness in conjunction with intent

to take the action in spite of such recognition. *See* Black's Law Dictionary, "bad

faith" (9th ed. 2009); *Anderson v. Continental Ins. Co.*, 271 N.W.2d 368, 376 (Wis.

1978) (tort of bad faith against an insurer "is an intentional one"); *General Cas. Co.*

*of Wis. v. Choles*, 2010 WI App 62, ¶ 13, 2010 WL 958028 (bad faith action against

insurer requires lack of reasonable basis for denying benefits and knowledge or

reckless disregard of that lack); *State v. Huebner*, No. 2010AP319-CR, 2010 WL

4967946, at ¶ 15 (Wis. App. Dec. 8, 2010) (defendant's due process right violated

by bad faith failure to preserve evidence where State aware of value of unpreserved

evidence and conscious effort made to suppress it); *Willowglen Acad.-Wis., Inc. v.*

*Connelly Interiors, Inc.*, 2008 WI App 35, ¶ 18 & n.6, 307 Wis. 2d 776, 746 N.W.2d

570 (likening the concepts of "actual knowledge" and "bad faith"); *Schultz v. Sykes*,

2001 WI App 255, ¶ 14, 248 Wis. 2d 746, 638 N.W.2d 604 (finding dismissal of

action as a sanction for bad faith requires a "conscious attempt" to affect litigation

---

[6] *See also Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) (purpose of *Erie* doctrine is to reach substantially same outcome as State court). However, unpublished opinions issued on or after July 1, 2009, may be cited for persuasive value. Wis. Stat. § 809.23(3)(b).

or "flagrant, knowing disregard" of judicial process). On the other hand, a breach of the duty of candor carries no intent requirement. *See Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985) (noting that breach of duty of candor requires only determination of whether defendants disclosed all possessed information germane to transaction); *cf. Yates v. Holt-Smith*, 2009 WI App 79, ¶ 19, 319 Wis. 2d 756, 768 N.W.2d 213 (stating that duty of loyalty, in avoiding self-dealing, involves a state of mind, thus the duty goes beyond "simple negligence"). Thus, it makes little sense to argue that the business judgment rule does not apply where a breach of the duty of candor is alleged. If that were the case, the rule would be eviscerated, as it would have seemingly no application to actions without a bad faith requirement, and would be superfluous as applied to actions already containing a bad faith requirement.[7] Therefore, the duty of candor is not outside application of the business judgment rule.

Finally, Dixon argues that the business judgment rule does not excuse a failure to maximize value in a merger transaction. For this argument, Dixon relies on *Revlon* and its progeny, but as discussed above, that case has no application in Wisconsin. Thus, though the court is not implying that the value secured in a merger transaction is irrelevant, it is one of a number of considerations a board may take into account and is properly reviewed through the lens of the business judgment rule.

---

[7]At least for purposes of motions to dismiss.

## B.    Sufficiency of Factual Allegations

Having resolved that the business judgment rule is applicable to the alleged conduct at issue, the court next determines that the complaint does not plausibly suggest that any of the Individual Defendants' conduct was carried out in bad faith. As noted earlier, Delaware law can serve as a guide to corporate law issues in Wisconsin. *Notz*, 2009 WI 30, ¶ 35. In analyzing Delaware's own business judgment rule, courts there have found that allegations of self-interested board members are insufficient to rebut the presumption where the facts do not show self-interest or conflict in a *majority* of the board. *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002); *see also In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 730 (Del. Ch. 1999) (golden parachute payments to management do not implicate duties of loyalty or good faith without alleging board as a whole lacked independence). Moreover, Delaware regularly recognizes that no-solicitation, matching rights provisions, and 4% termination fees are not *per se* unreasonable and do not alone constitute a breach of fiduciary duty. *In re 3Com S'holders Litig.*, 2009 WL 5173804, at *7 (Del. Ch. 2009); *cf. In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 725, 728-30 (Del. Ch. 1999) (no breach of fiduciary duties in merger with non-solicitation clause and roughly 2% termination fee); *Malpiede v. Townson*, 780 A.2d 1075, 1081 n.10, 1096-98 (Del. 2001) (insufficient aiding and abetting claim where merger's non-solicitation provisions and 7% termination fee did not support inference that defendant knowingly participated in a fiduciary breach). Similarly, absent a direct breach of

fiduciary duty in agreeing to such, "lock-ups and related agreements" are granted deference as business judgments. *State of Wis. Inv. Bd. v. Bartlett*, 2000 WL 238026, at *9 (Del. Ch. 2000) (citing *Revlon*). In that case, the court found no problem with either the termination fee or the no talk/no shop provision. *Id.*

In light of these cases, Dixon's complaint does not allege bad faith beyond a speculative level. The allegations implicating breach of fiduciary duty are divided into three groups, one describing the circumstances surrounding the merger agreement (Am. Compl. ¶¶ 38-42);[8] another describing the "deal protection devices" included as terms in the agreement (Am. Compl. ¶¶ 43-48); and the third describing the "misleading and/or incomplete" registration statement (Am. Compl. ¶¶ 49-56). Prior to these three groups of allegations, the Amended Complaint also describes the recent history of Ladish, including a rebound in profitability and press releases from the board expressing optimism with regard to future performance. (Am. Compl. ¶¶ 34-40).[9] The court deals with each group in turn.

### 1. Facts Surrounding the Transaction

Here, Dixon alleges that after the merger was announced, the value of Ladish stock rose while the value of Allegheny stock declined and that, in the face of Ladish's improving financial performance, Ladish Defendants failed to maximize the value for Ladish shareholders. Dixon further asserts that the financial advisor

---

[8]Through mistaken labeling, the Amended Complaint contains two sets of paragraphs labeled 38-40. Those cited here begin on page 13.

[9]This citation ends its reference with the first set of paragraphs labeled 38-40.

retained by Individual Defendants had a conflict of interest because it owned shares of Allegheny, thus rendering Individual Defendants incapable of acting in the best interests of Ladish. She also alleges that "several" Individual Defendants have employment contracts that provide severance pay upon involuntary termination. However, the complaint only actually alleges that two members of the seven-person board have contracts with these provisions. None of these facts are sufficient to make an allegation of bad faith anything more than speculative.

First, as discussed previously, there is no duty to solely focus on maximizing value for shareholders. And to the extent it is a consideration, sale of a financially improving company, without more, is not only merely consistent with bad faith, but likely less than consistent with bad faith. This alleged act is exactly of the type the business judgment rule is intended to shield. Absent such protection, businesses could only be sold without fear of an expensive law suit and discovery if they happened to be failing financially. That seems an exceptionally odd proposition given that poor financial performance is not exactly an aphrodisiac for buyers. Not to say that buying cheaply is not also a valid strategy, but that just goes to show that selling a company that is financially improving and selling one which is financially declining are business judgments, equally consistent with good and bad faith, and both entirely speculative bases for allegations of bad faith. The court cannot reasonably infer bad faith from this price alone.

Neither do the alleged conflicts of interest create a plausible claim of bad faith. As noted, a conflict in the board as a whole must be present to infer a breached duty of loyalty. Two out of seven is not a majority. Further, the alleged conflict of the financial advisor does not raise the allegation of bad faith here out of the realm of speculation. First, the alleged conflict is actively disclosed in the registration statement disseminated to shareholders, as is the reasoning behind the advice provided to the Individual Defendants by the financial advisor. (Oldenburg Decl. Ex. A, at 34-43) (Docket #35-1).[10] This negates an inference that the Individual Defendants breached the duty of loyalty in accepting the financial advisors advice and then voting to approve the merger. Second, Dixon is essentially arguing that a conflict in an advisor, disclosed by the board, imputes a conflict on the board. But Dixon never alleges anything to suggest that the board members acted with an eye toward self-dealing, or otherwise in bad faith, simply by engaging the services of the financial advisor. Without any facts to connect the advisor's alleged conflict to imputation of the conflict on the board, there remains no more than a suspicion of bad faith, not a plausible allegation of such. This is particularly true where the fact that the board disclosed the advisor's potential conflict militates against any bad faith on the part of the board. Ultimately, this set of allegations would ask a fact finder to

---

[10]District courts may take judicial notice of matters of public record in a 12(b)(6) motion. *Anderson v. Simon*, 217 F.3d 472, 474-45 (7th Cir. 2000). In any event, the statement was submitted by Dixon.

micromanage board decision making, and that is inappropriate under the business judgment rule where the plaintiff has not sufficiently alleged bad faith.

### 2. Deal Protection Devices

The next set of allegations essentially ask a fact finder to infer from the terms of the merger agreement that the Individual Defendants breached their fiduciary duties. However, to the extent Dixon expects these allegations to show a failure to maximize value under *Revlon*, that case does not control, as discussed previously. And, to the extent these allegations are intended to create an inference of bad faith, they fail on that point as well. As noted above, Delaware courts have regularly approved of such protective devices absent other showing of breached fiduciary duties.[11] The court does not otherwise find any sufficient showing of breached duties, thus these terms alone cannot state a claim for breach. Because the terms themselves are insufficient to establish breach of fiduciary duties, they are certainly insufficient to establish the bad faith necessary to overcome the business judgment rule.

### 3. Registration Statement

The final series of allegations, though likely primarily included to support claimed violations of the Securities Exchange Act, can also be read to allege a breach of the duty of candor. However, none of the allegations themselves allow a reasonable inference of bad faith, thus failing to more than speculatively rebut the

---

[11] Even within the *Revlon* context.

business judgment rule's presumption.  Though the PSLRA's particularity pleading requirements are not applicable to a common law action, much of the issue's discussion is helpful to determination here.  Because Dixon never actually explains what statements are false or misleading as a result of the complained-of omissions, nor why they become misleading as a result, the inference that these omissions are the result of bad faith becomes highly speculative.  The bulk of Dixon's allegations regarding the registration statement identify missing information that would otherwise expand upon information that is in fact included in the statement.  A lack of granular specificity, particularly in light of what otherwise appears to be a thorough explanation of the agreement and process, cannot reasonably support an inference of bad faith.  If it did, any plaintiff could merely imagine some piece of detail not included, bring suit, and force expensive discovery.  Thus, the facts alleged create no more than the sheer possibility that the Individual Defendants issued the statement in bad faith, and that does not state a plausible claim.

### C.    Conclusion

Based on the foregoing discussion, the court finds both that the business judgment rule is applicable, and that Dixon has failed to state a plausible claim capable of overcoming the rule's presumption.  The rule requires a plaintiff to plead bad faith and a failure to act with an honest belief that action is in the best interests of the corporation.  Dixon has alleged nothing that suggests more than the sheer

possibility of bad faith. Thus, the court will dismiss this count as well for failure to state a plausible claim.[12]

Accordingly,

**IT IS ORDERED** that the defendants' Motion to Dismiss Plaintiff's Amended Complaint (Docket #19) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the defendants' Motion to Coordinate Discovery (Docket #22) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

---

[12]The court dismisses both counts with prejudice given that Dixon did not argue for leave to amend in its briefing, nor has it made any other request up to this point. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006).